**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
**CHARLES D. AUSTIN**
**UNITED STATES MAGISTRATE JUDGE**

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
**(410) 962-7810**
MDD_CDAChambers@mdd.uscourts.gov

March 27, 2026

LETTER TO ALL COUNSEL OF RECORD

Re:   *Richard H. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
      Civil No. 25-00758-CDA

Dear Counsel:

On March 7, 2025, Plaintiff Richard H. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2025). I have considered the record in this case (ECF 9) and the parties' briefs (ECFs 12 and 14). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's motion, GRANT Defendant's motion, and AFFIRM the Commissioner's decision. This letter explains why.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on August 6, 2020, alleging a disability onset of June 20, 2019. Tr. 193. Plaintiff's claims were denied initially and on reconsideration. Tr. 213, 229. On November 3, 2023, an Administrative Law Judge ("ALJ") held a hearing. Tr. 17-89. At the administrative hearing, Plaintiff amended their disability onset date to March 7, 2021, thus withdrawing his claim for disability insurance benefits as his date-last-insured for benefits was December 31, 2019. Tr. 88, 193; ECF 12, at 2; ECF 14, at 2-3, n. 2. Following the hearing, on November 17, 2023, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 190-207. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes

---

[1] Plaintiff filed this case against Leland Dudek, the Acting Commissioner of Social Security on March 20, 2025. ECF 1. Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

*Richard H. v. Bisignano*
Civil No. 25-00758-CDA
March 27, 2026
Page 2

the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).  On appeal is Plaintiff's claim regarding his Title XVI application for SSI. *See* ECF 12, at 2; ECF 14, at 2-3, n. 2.

## II.    THE ALJ'S DECISION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  The ALJ must evaluate a claimant's disability determination using a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.  "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'"  *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since March 7, 2021, the amended, alleged onset date[.]"  Tr. 196.  At step two, the ALJ found that Plaintiff suffered from the severe impairments of "unspecified depressive disorder; generalized anxiety disorder; obesity; and Achilles tendonitis status-post resection exostosis right foot."  Tr. 196.  The ALJ also determined that Plaintiff suffered from the non-severe impairments of "diabetes mellitus, essential hypertension, mixed hyperlipidemia, and hernia.  However, the medical records indicate these impairments are, generally, treated with medications and monitored by his primary care physicians."  Tr. 196.  The ALJ also noted that Plaintiff's "attention deficit hyperactivity disorder (ADHD) and learning disorders [are] non-severe."  Tr. 196.  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."  Tr. 197.  Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 C.F.R. 416.967(c) except: The claimant is limited to 4 hours of standing and walking in an 8-hour day. The claimant can climb ramps and stairs frequently, climb ladders, ropes, or scaffolds frequently, balance frequently, stoop frequently, kneel frequently, crouch frequently, crawl frequently. The claimant must avoid concentrated exposure to vibration. The claimant can perform simple and detailed but not complex instructions for periods of 2 hours at a time before needing a break. He is unable to perform high-quota, production rate, pace work where workers must meet strict, hourly quotas. He is able to interact with supervisors, coworkers, and the public occasionally. The claimant's time off-task can be accommodated by normal breaks in the workday.

Tr. 199.  The ALJ determined that the "[t]ransferability of job skills is not an issue in this case

*Richard H. v. Bisignano*
Civil No. 25-00758-CDA
March 27, 2026
Page 3

because [Plaintiff's] past relevant work is unskilled." [3]  Tr. 205; 20 C.F.R. §§ 404.1568, 416.968. Plaintiff, however, could perform other jobs that existed in significant numbers in the national economy, such as Office Helper (DOT # 239.567-010), Mail Clerk (DOT # 209.687-026), and Office Machine Operator (DOT # 207.685-014).  Tr. 206.  Therefore, the ALJ concluded that Plaintiff was not disabled.  Tr. 206.

### III.   LEGAL STANDARD

The scope of the Court's review concerns whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  It is "more than a mere scintilla . . . and somewhat less than a preponderance."  *Id.*  In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence.  *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.   ANALYSIS

Plaintiff alleges two errors on appeal: (1) the RFC as it relates to Plaintiff's ability to perform the mental demands of work; and (2) the ALJ's evaluation of Plaintiff's subjective complaints.  ECF 12, at 4, 13.  As to the first argument, Plaintiff avers that the ALJ failed to (1) provide a narrative discussion supporting the limitations assessed in the RFC; and (2) properly address evidence pertinent to the RFC assessment.  ECF 12, at 6, 9.  Defendant counters that the ALJ's evaluation of the Plaintiff's impairments and RFC comported with both regulation and policy and that ALJ considered Plaintiff's subjective complaints under the proper framework.  ECF 14, at 6, 17.  The Court agrees with the Defendant.

   *a.  The ALJ properly evaluated Plaintiff's RFC.*

A claimant's RFC represents "the most [they] can still do despite [their] limitations."  20 C.F.R. § 416.945(a).  In assessing RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'"  *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)).  Pursuant to Social Security Rule ("SSR") 96-8p, in assessing a limitation, the ALJ's opinion must include an evaluation of a

---

[3] The ALJ determined that Plaintiff is unable to perform past relevant work as a cashier (DOT #211.462-010) and as a warehouse worker (DOT # 922.687-058) because "[t]he demands of the claimant's past relevant work exceed his [RFC]."  Tr. 205.

claimant's ability to perform the physical functions listed in 20 C.F.R. § 416.95(b), including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions" that may reduce [a claimant's] ability to . . . work." 20 C.F.R. § 416.945(b); *see* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). Only after this analysis may an ALJ express RFC in terms of exertional level of work that the ALJ believes the claimant can perform. *See Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021). As *Dowling* explains, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Id.* at 387. (alteration in original) (citation omitted). Thus, an ALJ must identify evidence that supports their conclusions and build an accurate and logical bridge from that evidence to their conclusions. *See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence"). In cases that reach step five of the sequential evaluation process, an ALJ must pose hypothetical questions to a vocational expert to determine whether the claimant's RFC precludes the claimant from performing jobs existing in substantial numbers in the national economy. *See Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005).

When a claimant possesses a mental impairment, an ALJ must make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)). One of these four areas, maintaining concentration, persistence, and pace ("CPP"), concerns "the abilit[y] to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" limitation in CPP means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.* § 12.00(F)(2)(c).

Specific to a limitation in the functional area of CPP, an ALJ must then expressly account for such limitation, or explain why no limitation exists, in the function-by-function analysis. *Mascio*, 780 F.3d at 638 (4th Cir. 2015); *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). An ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations. *See Mascio*, 780 F.3d at 638; *Shinaberry*, 952 F.3d at 121–22. However, an ALJ may accommodate a claimant's moderate CPP limitations by assigning persuasive value to a medical opinion that "provide[s] substantial support for" the ALJ's CPP-related RFC provisions. *Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017). In other words, through one means or another, where an ALJ finds that a "plaintiff [i]s moderately limited in CPP, the ALJ must account for those limitations in the RFC or explain how [the] plaintiff could maintain CPP while performing simple, routine tasks." *Everlena G. v. Kijakazi*, No. DLB-20-0784, 2021 WL 3912277, at *3 (D. Md. Sept. 1, 2021).

In their assessment, the ALJ cited evidence relevant to Plaintiff's claims that he suffered from the mental impairments of depressive disorder and anxiety. The ALJ noted mild limitation in "understanding, remembering or applying information[;]" a moderate limitation in interacting

*Richard H. v. Bisignano*
Civil No. 25-00758-CDA
March 27, 2026
Page 5

with others; a moderate limitation with "concentrating, persisting or maintaining pace[;]" and a mild limitation as for "adapting or managing oneself." Tr. 197-98. The ALJ assigned partly persuasive value to the opinions of a State Agency Psychiatric Consultant at the initial level, where the consultant found "severe mental impairment with moderate limitations in understanding and remembering and in concentration areas but no limits in social or adapting areas[.]" Tr. 204. The ALJ found more persuasive the assessment at reconsideration, which expressed "mild limits in understanding and remembering, no limits in adapting, and moderate limits in social and concentration areas." *Id.* The ALJ explained that it assigned the reconsideration assessment a higher persuasive value because the hearing level records, as well as the Plaintiff's living situation, daily activities, and his mother's testimony, support moderate social limitations, along with the fact that Dr. Kaiser's cognitive testing were consistent with moderate concentration limitations. *Id.*

Next, the ALJ considered other medical sources. They gave no consideration to Dr. Williams' statement regarding the claimant's inability to perform jury duty due to anxiety and depression. *Id.*, at 204. Not having offered an opinion on work limitations, Dr. Williams' statement "offers no persuasive value in this medical disability claim." *Id.* Similarly, Dr. Ofori-Awuah's physical examination and Dr. Stern's psychological consultative exam received no weight in the analysis because neither offered opinions on mental work limitations. *Id.* The ALJ turned to Dr. Kaiser's assessment concerning objective cognitive test scores and opinion that Plaintiff would require assistance with any funds awarded. *Id.* The ALJ deemed this opinion partially persuasive because it is consistent with the testing and record evidence. *Id.* Additionally, the ALJ weighed Dr. Kaiser's report of some cognitive defects and that Plaintiff has lived with his parents, with little social life, against Plaintiff's history of holding previously holding jobs, playing video games, shopping in stores, watching television, and using the computer for social media. *Id.* Based on these assessments, the ALJ found Plaintiff's mental functioning consistent with moderate social and concentration limitations. Tr. 204-05.

"The RFC determination is an issue ultimately reserved for the ALJ." *Geraldine S. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-3447, 2019 WL 3935376, at *1 (D. Md. Aug. 20, 2019). An ALJ's RFC determination must be based "on all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). Although the ALJ did not specifically mention the recommendation for special supervision, such a discrepancy does not warrant remand. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a [source's] opinions verbatim; nor is the ALJ required to adopt the [source's] limitations wholesale."); *Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014) ("[N]o rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight.").

At step three, the ALJ found that Plaintiff had a moderate CPP limitation. Tr. 198. The ALJ considered Plaintff's reports that he watched TV and played video games, as well as reported doing a variety of daily tasks that required some concentration, persistence, and pace. *Id.* The ALJ noted that in the medical records, the Plaintiff generally did not report serious difficulty with

*Richard H. v. Bisignano*
Civil No. 25-00758-CDA
March 27, 2026
Page 6

maintaining concentration, persistence, and pace, but that Dr. Kaiser confirmed some deficits in this area. *Id.* In assessing the Plaintiff's RFC, the ALJ ultimately concluded that Plaintiff "can perform simple and detailed but not complex instructions for periods of 2 hours at a time before needing a break. He is unable to perform high-quota, production-rate, pace work where workers must meet strict, hourly quotas." Tr. 199. Plaintif's moderate CPP limitation, according to the ALJ, "can be accommodated by normal breaks in the workday." *Id.*

With respect to interacting with others, the ALJ found that Plaintiff had a moderate limitation Tr. 198. The ALJ observed that Plaintiff and his mother testified to "his limited social ability." *Id.* The ALJ noted, however, that the record medical evidence demonstrated Plaintiff interacted normally with all treating practitioners, exhibiting "no distress" and "no serious deficiencies in eye contact, speech, or conversation." *Id.* Thus, in assessing Plaintiff's RFC, the ALJ concluded that "[Plaintiff] is able to interact with supervisors, coworkers and the public occasionally." *Id.*

Plaintiff argues that the RFC assessment is flawed because the ALJ "failed to set forth a narrative discussion setting forth how the evidence supported *each conclusion*, citing specific medical facts and nonmedical evidence." ECF 12, at 6 (emphasis in original). Plaintiff posits that the ALJ did not adequately explain how he arrived at the limitation assessed in the RFC. *Id.*, at 9. Plaintiff also avers that the ALJ failed to evaluate all pertinent evidence before the RFC assessment. *Id.* On this point, Plaintiff contends that the ALJ failed to provide an adequate explanation for "rejecting evidence of the Plaintiff's need for special supervision[,]" despite such potential need being raised by medical experts, and the ALJ's failure to recognize that Dr. Kaiser reported that Plaintiff was able to follow simple one-step instructions. *Id.*, at 10-11. Plaintiff insists that "[d]espite finding that the opinions of the State Agency physician at the reconsideration level were persuasive, and generally consistent with the record[, the ALJ] failed to include any limitation in his [RFC] related to the need for special supervision,[4] without explanation." ECF 12, at 10. The Defendant counters that the ALJ's evidentiary discussion contains detail sufficient to permit a reviewing court to "trace the path" of his reasoning to arrive at the final RFC. ECF 14, at 8-9. As the Commissioner contends, the ALJ provided a narrative discussion of his reasoning by discussing the Plaintiff's testimony, on its own and in comparison to the information in his function report and the medical evidence of record. *Id.*, at 10.

The Court finds the Plaintiff's argument unavailing. An ALJ need not discuss every piece of evidence of record or follow a particular format in conducting their analysis. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) ("'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision'") (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curium)). Here, Plaintiff disagrees with the ALJ's conclusions, which are supported by substantial evidence as discussed in sufficient detail,

---

[4] By "special supervision" Plaintiff refers to a rating by four medical professionals in their "Disability Determination Explanation" which reads: "Rate the individual's sustained concentration and persistence limitations: . . . The ability to sustain an ordinary routine without supervision. Moderately limited." ECF 12, at 10 (citing Tr. 102, 119, 148, 178).

including as set forth and referenced above.  Whether Plaintiff, I, or anyone else could or would have found differently than the ALJ is of no moment.  This Court "does not reweigh evidence . . . in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' we defer to the Commissioner's decision."  *Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) (quoting *Johnson*, 434 F.3d at 653).  That the ALJ did not specifically mention supervision, when they otherwise thoroughly explained their analysis and conclusions, does not render the RFC erroneous.

    *b.   The ALJ properly evaluated Plaintiff's subjective complaints.*

The Court finds that the ALJ properly accounted for Plaintiff's subjective complaints as to Plaintiff's physical and mental limitations.  When evaluating subjective complaints, ALJs use the two-step analytical process set forth at 20 C.F.R. §§ 404.1529 and 416.929 and described in SSR 16-3p.  *See Oakes v. Kijakazi*, 70 F.4th 207, 215 (4th Cir. 2023) (citing *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020)).  Step one requires an ALJ to determine whether a "medically determinable impairment" exists that could "reasonably be expected to produce the claimant's alleged symptoms."[5]  *Oakes*, 70 F.4th at 215 (quoting *Arakas*, 983 F.3d at 95).  At step two, the ALJ assesses "the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled."  *Id.* (quoting *Arakas*, 983 F.3d at 95).  Because "disability benefits can be awarded on the sole basis of an objective impairment and derivative subjective pain," a claimant may "rely exclusively on subjective evidence" at step two.  *Id.* (quoting *Arakas*, 983 F.3d at 95-96).  Thus, "an ALJ applies the incorrect legal standard in discrediting complaints 'based on [a] lack of objective evidence corroborating them.'"[6]  *Id.* (quoting *Arakas*, 983 F.3d at 96) (brackets in original); *accord* SSR 16-3p, 2017 WL 5180304, at *5 ("[W]e will not disregard an individual's statements about [their] symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual.").

While an ALJ may not dismiss subjective complaints "based *entirely* upon the belief that they were not corroborated by the record's medical evidence," the ALJ must still "ascertain the extent of the claimant's alleged functional limitations and restrictions due to their pain or symptoms that could be reasonably accepted as consistent with the medical signs, laboratory findings, and other evidence, in discovering how these symptoms impact the claimant's ability to work."  *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 360 (4th Cir. 2023) (citing *Craig*, 76 F.3d at 594) (emphasis in original); *see also Oakes v. Kijakazi*, 70 F.4th at 216 (explaining that "ALJs may consider daily activities when evaluating symptoms, including pain" but "'[a]n ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which [he] can perform them.") (citing 20 C.F.R. § 404.1529(c)(3)(i) and then quoting *Woods*,

---

[5] A "symptom" is a claimant's "own description or statement of [their] physical or mental impairment(s)."  SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).

[6] "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption."  20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

*Richard H. v. Bisignano*
Civil No. 25-00758-CDA
March 27, 2026
Page 8

888 F.3d at 694) (brackets and emphasis in original). In this respect, SSR 16-3p recognizes that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms[.]" SSR 16-3p, 2017 WL 5180304, at *5. Therefore, an ALJ "must consider whether an individual's statements about the intensity, persistence, and limiting effects of [their] symptoms are consistent with the medical signs and laboratory findings of record." *Id.* To do this, an ALJ considers "all of the evidence" in a claimant's record. *Id.* at *2, *7.

At step two, the ALJ found Plaintiff to suffer from the severe impairments of unspecified depressive disorder, generalized anxiety disorder, obesity, and Achilles tendonitis status-port resection exostosis of his right foot. Tr. 196. The ALJ determined that Plaintiff's impairments did in fact cause limitations. In addition to the CPP limitations discussed *supra*, the ALJ limited the Plaintiff to "4 hours of standing and walking in an 8-hour day . . . [and that he] must avoid concentrated exposure to vibration." Tr. 199. However, the ALJ continued, the Plaintiff's "allegations are not entirely supported by the objective medical evidence" nor do "the records support the severity he alleges." Tr. 201

The ALJ comported with 20 C.F.R. § 404.1529 and *Arakas* insofar as they did not require Plaintiff to produce "objective evidence" to corroborate subjective complaints of his pain. *Arakas*, 983 F.3d at 96. Contrary to Plaintiff's assertions, the ALJ did adequately consider his statements concerning the intensity, persistence and limiting effects of his symptoms. ECF 12, at 17. The ALJ noted that the Plaintiff's surgery for his right Achilles tendon rupture occurred in September 2014 but he still reports pain with standing and walking. Tr. 201. In his medical records, however, there is no evidence of continued treatment for this pain and all his physical examinations with Dr. Angelo are unremarkable and indicate no extremity irregularities nor any issues with ambulation, gait dysfunction, or need for an assistive device. *Id.*

Reading the ALJ's analysis, it is apparent that the ALJ weighed Plaintiff's subjective complaints against other record evidence in a manner permissible under *Shelly C.*, *Oakes*, and *Arakas*. *See Audlica D. v. Kijakazi*, No. 22-1046-BAH, 2023 WL 1769665, at *3 (D. Md. Feb. 3, 2023) (finding the ALJ's analysis consistent with *Arakas* where it considered claimant's qualifying statements about pain and other evidence documenting improvement in symptoms); *Lasharne W. v. Comm'r, Soc. Sec. Admin.*, No. SAG-21-2603, 2023 WL 2414497, at *4 (D. Md. Mar. 8, 2023) ("This case is otherwise distinguishable from *Shelley C.*, where the ALJ improperly ignored the waxing and waning nature of depression symptoms by citing only to treatment notes where the claimant was stable and by omitting evidence of the claimant's subsequent periods of intense depression symptoms."). Moreover, *Arakas* holds that "ALJs may not rely on objective medical evidence (or the lack thereof) . . . to discount a claimant's subjective complaints regarding symptoms of . . . some disease that does not produce such evidence." 983 F.3d at 97. For the reasons stated above, this case appears distinguishable from *Arakas* for reasons expressed in *Audlica D.* and *Lasharne W.*

In the end, although a reasonable factfinder could have reached different conclusions than the ALJ did, it is not the Court's role to "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ[.]" *Collins v. Kijakazi*, No. 22-

*Richard H. v. Bisignano*
Civil No. 25-00758-CDA
March 27, 2026
Page 9

1947, 2024 WL 1405894, at *1 (4th Cir. Apr. 2, 2024) (quoting *Shelley C.*, 61 F.4th at 353.).  When faced with "conflicting evidence" that would permit "reasonable minds to differ," the Court must "defer to the ALJ's decision." *Shinaberry*, 952 F.3d at 123 (4th Cir. 2020).

## V.    **CONCLUSION**

For the reasons set forth herein, Plaintiff's motion for reversal, ECF 12, is DENIED and Plaintiff's alternative motion for remand, ECF 12, is DENIED.  Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED.  The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.


Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge